UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARTHA FRANCES ADAMS, as Personal Representative of the Estate of Herman Smoot,<br><br>  Plaintiff,<br><br>  v.<br><br>WARNER HEINRICHS and BWG TRANSPORT LTD. d/b/a NIGHT TRAIN EXPRESS,<br><br>  Defendants. | CIVIL ACTION NO. 1:20-cv-04899-JPB |

# **ORDER**

Before the Court are the following motions: (i) Defendants Warner Heinrichs ("Heinrichs") and BWG Transport Ltd. d/b/a Night Train Express' ("BWG") (collectively "Defendants") Motion for Summary Judgment ("Motion for Summary Judgment"), ECF No. 40; and (ii) Plaintiff Martha Frances Adams' ("Adams")[1] Motion for Leave to File Expert Witness Disclosures ("Motion for Leave"), ECF No. 53. Having reviewed and fully considered the papers filed therewith, the Court finds as follows:

---

[1] Herman Smoot, the injured party in this case, passed away from unrelated causes after filing the Complaint, and Adams, the personal representative of Smoot's estate, was substituted as the plaintiff.

I.     **BACKGROUND**

Herman Smoot filed a complaint against Defendants alleging negligence and other claims as a result of a December 18, 2018 tractor-trailer accident (the "Accident"). Heinrichs was driving the tractor-trailer on behalf of BWG when the collision with Smoot's automobile occurred.

The undisputed facts are straightforward. Smoot was returning from a doctor's appointment concerning back and leg pain when the Accident occurred. He was transported by ambulance to the hospital, where he complained of back pain. He returned to the emergency room approximately four months later with complaints of worsened back pain. Smoot eventually had surgery to address his symptoms but he continued to experience back pain and numbness, tingling and pain in both of his legs.

Smoot's daughter testified that Smoot complained of back and leg pain for at least two to three years before the Accident. In addition to the medical appointment on the day of the Accident, Smoot sought medical care for back pain on May 9, 2016, April 11, 2017, and October 23, 2017, and for numbness, tingling and pain in both legs on November 8, 2017, July 5, 2018, September 19, 2018, and November 27, 2018.

Defendants ask the Court to grant summary judgment on Adams' claims because they contend Adams cannot carry her burden to show causation. Specifically, Defendants argue that Adams' failure to designate an expert on causation is fatal to her claims because the alleged injuries and Smoot's preexisting conditions present specialized medical questions regarding causation. Based on their argument that Adams cannot prove causation, Defendants further assert that Adams' vicarious liability claim against BWG only and her claims for attorneys' fees and costs of litigation against each defendant should also fail.

Additionally, Defendants argue that summary judgment is appropriate on Adams' claim against each defendant for punitive damages and against BWG only for negligent hiring and supervision because there is no evidence in the record to support such claims.

Adams responds that expert testimony is not necessary to prove causation in a negligence case. In Adams' view, the facts of the Accident and alleged injury are simple, and causation would be within the common knowledge and experience of a juror.

Adams did not respond to Defendants' arguments regarding her negligent supervision and punitive damages claims.

In her Motion for Leave, Adams separately requests permission to submit late expert disclosures. She seeks to offer Dr. Steven Citron ("Citron") as an expert witness in this case. Citron treated Smoot in April 2019 (approximately four months after the Accident) when he presented at the emergency room of Piedmont Henry Hospital complaining of back pain. Adams argues that Citron is a key witness on the issue of causation. She expects Citron to testify that Smoot had a fracture in his spine when he was seen in the emergency room on the day of the Accident.

Adams argues that her failure to disclose Citron sooner is justified and is harmless for several reasons. First, she contends that Citron is not a surprise witness because Defendants had access to Smoot's medical records and therefore were aware of Citron's anticipated testimony. Adams further asserts that she reserved the right in her discovery disclosures to call Smoot's treating physicians for the purpose of establishing causation and damages.

Second, Adams states that Defendants' discovery responses were also late and argues that Defendants' actions contributed to the late disclosure because they "laid in wait" hoping that her failure to designate an expert would doom the case.

Third, Adams argues that admitting Citron's testimony would not disrupt the trial of this matter because the Court has not yet set a trial date.

Fourth, Adams explains that Citron's testimony is critical to her case. In the alternate, she argues that Citron should at least be permitted to testify as a fact witness.

Finally, Adams claims that she was diligent in seeking the necessary disclosures from Citron but was unsuccessful because Citron has refused to cooperate, despite Adams' months-long effort to engage him.[2]

Defendants respond that Citron's testimony should be excluded because Adams' failure to designate him as an expert witness and to provide the required disclosures is not justified and is prejudicial. Defendants point out that Adams sought leave to file the late expert disclosure on January 27, 2022, six and a half months after the expert disclosure deadline, four months after the close of discovery, two and a half months after the dispositive motions deadline and eight days after the close of the summary judgment briefing.

As further evidence of Adams' lack of diligence, Defendants note the admission of Adam's counsel that he first attempted to contact Citron during the first week of August 2021, which was approximately two weeks after the July 15, 2021 expert disclosure deadline. Defendants also argue that Adams could have notified them that she intended to designate Citron as a witness much sooner or

---

[2] Adams also asks the Court to permit her to designate a retained expert should Citron continue refusing to cooperate.

requested an extension of the discovery period if she was having difficulty securing the necessary disclosures. Adams also did not seek to retain and disclose another expert. In Defendants' view, Adams' lack of diligence and her argument that expert testimony is not necessary to prove causation demonstrate that Citron's testimony is not critical to Adams' case.

In sum, Defendants assert that allowing Adams to disclose an expert witness after discovery has closed and summary judgment briefing is ripe is unjustified and will cause prejudice, including unfair surprise and a delay in moving the case forward. Defendants conclude that these are sufficient reasons to exclude Citron's testimony or any other expert Adams seeks to designate in this case.

## II.   DISCUSSION

### A.   Motion for Summary Judgment

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56) (quotation marks omitted). A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642,

646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court … is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen*, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.*

After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist. *Id.* In carrying this burden, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

In sum, if the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita*

7

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### 1. Analysis

Under Georgia law,[3] "'[i]t is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Goldstein, Garber & Salama, LLC v. J.B.*, 797 S.E.2d 87, 89 (Ga. 2017) (quoting *Johnson v. American Nat. Red Cross*, 578 S.E.2d 106, 108 (Ga. Ct. App. 2003)). To establish proximate cause, "'a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury'" and must "'introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.'" *Whiteside v. Decker, Hallman, Barber & Briggs, P.C.*, 712 S.E.2d 87, 90 (Ga. Ct. App. 2011) (quoting *Grinold v. Farist*, 643 S.E.2d 253, 254 (Ga. Ct. App. 2007)). "Proximate cause is properly reserved for the jury and can only be appropriately addressed on summary judgment in 'plain and indisputable cases.'" *Schernekau v. McNabb*, 470 S.E.2d 296, 298 (Ga. Ct. App. 1996) (quoting *Atlanta Ob. & Gyn. Group v. Coleman*, 398 S.E.2d 16, 18 (1990)); *see also Seymour Elec. & Air Conditioning Serv., Inc. v.*

---

[3] The parties agree that Georgia law applies in this diversity case.

*Statom*, 710 S.E.2d 874, 877 (Ga. Ct. App. 2011) (stating that "'[q]uestions of negligence generally are for the jury, and may be resolved on summary judgment only where the evidence is plain, palpable and undisputable'" (citation omitted)). Still, a court may grant summary judgment where there is only a "'mere possibility'" of causation "'or the probabilities are at best evenly balanced.'" *Whiteside*, 712 S.E.2d at 90.

"[E]xpert evidence typically is not required to prove causation in a simple negligence case." *Cowart v. Widener*, 697 S.E.2d 779, 781 (Ga. 2010). A lay jury can conclude from common knowledge that a causal connection exists between an accident and an injury where there is a short lapse between the accident and the onset of the plaintiff's symptoms. *See Hutcheson v. Daniels*, 481 S.E.2d 567, 569 (Ga. Ct. App. 1997) (affirming the denial of a motion for directed verdict where the jury's finding of causation was based on the plaintiff's testimony that he began experiencing symptoms "a few days" after the accident).

"However, expert testimony is necessary where the issue of causation presents 'specialized medical questions,' *i.e.*, where 'the link between a defendant's actions and the plaintiff's injury is beyond common knowledge and experience' and presents medical questions that 'can be answered accurately only by witnesses with specialized expert knowledge.'" *Cooper v. Marten Transp.,*

9

*Ltd.*, 539 F. App'x 963, 967–68 (11th Cir. 2013) (quoting *Cowart*, 697 S.E.2d at 785-86). One such instance is the "'diagnosis and potential continuance of a disease or other medical condition.'" *Seymour*, 710 S.E.2d at 877 (citation omitted). For example, in *Seymour*, the Georgia Court of Appeals reversed the trial court's denial of summary judgment where the plaintiffs failed to provide expert testimony to support their claim that their alleged exposure to carbon monoxide caused their medical condition. *See id*. at 878. The court found that this type of causal connection could be established only with the assistance of medical experts with specialized knowledge. *See id*. at 877.

In *Cooper*, the plaintiffs had histories of a degenerative back disorder that had been compounded by obesity and another car accident the previous year. *See Cooper*, 539 F. App'x at 966. The dispute centered on whether expert testimony was required to prove alleged causation of back injuries from the accident given the plaintiffs' preexisting conditions. *See id*. The Eleventh Circuit Court of Appeals observed that "Georgia law allows the factfinder to draw a causal inference based on temporal proximity between an accident and an injury." *Id*. at 968. Thus, it found that "[w]hether the [plaintiffs] suffered new or aggravated back problems shortly after a low-speed collision with a tractor trailer is the type of question a lay jury could decide based on common knowledge." *Id*. The court

reversed the district court's grant of summary judgment to the defendants because the defendants' "evidence that the [plaintiffs] injuries may have been the result of preexisting conditions" simply "created a dispute of material fact that the district court was not authorized to resolve at the summary judgment stage." *Id*.

In *Bruce v. Classic Carrier, Inc.*, the magistrate judge acknowledged that the proximate cause issue regarding a neck injury was "more complex" because the plaintiff had a history of chronic neck pain prior to the accident. No. 1:11-cv-01472-JEC, 2014 WL 1230231, at *19 (N.D. Ga. Mar. 24, 2014). Relying in part on the *Cooper* opinion, the district judge approved the magistrate judge's recommendation to deny summary judgment. *Id*. at *8. The district judge concluded that medical expert testimony on causation was not necessary to survive summary judgment where the plaintiff reported symptoms soon after the tractor-trailer accident, and he had not experienced those symptoms in the years prior to the accident. *Id*. The court emphasized that the defendants could "raise issues relating to [the] plaintiff's medical history and introduce alternative theories about the cause of plaintiff's injuries, but those [were] matters for the trier of fact to weigh, not for [the court] to decide on a motion for summary judgment." *Id*.

Here, Smoot's preexisting conditions of back pain and leg numbness and tingling add complexity to the question of whether a jury can infer causation of

new or aggravating back and leg injury from the accident without expert testimony to connect the dots.  On one hand, there is lay testimony in the record regarding the facts of the Accident and Smoot's subsequent symptoms and medical treatment.  A jury could conclude that a causal connection exists between Smoot's accident and his injuries based on temporal proximity.  See *Hutcheson*, 481 S.E.2d at 569.

On the other hand, there is significant evidence in the record of preexisting conditions that bear directly on Smoot's claim of injury.  The jury may well need the assistance of experts to determine whether the accident caused new or aggravating injuries.

Georgia law, however, views this issue as a question of disputed fact and tasks the jury, not the judge, with weighing the facts and deciding whether the plaintiff has carried the burden on causation.  *See, e.g.*, *Cooper*, 539 F. App'x at 968; *Bruce*, 2014 WL 1230231, at *8; *Hutcheson*, 481 S.E.2d at 569.  The Court may not circumvent this process and decide the issue at summary judgment.  Accordingly, Defendants Motion for Summary Judgment is **DENIED** to the extent it is based on the argument that Adams cannot carry her burden on causation.[4]

---

[4] Adams did not respond to Defendants' arguments that they are entitled to summary judgment on her claim for punitive damages against each defendant (Counts III and VII) and for negligent supervision against BWG only (Count V).  The Court therefore finds that Adams has abandoned these claims.  *See Clark v. City of Atlanta*, 544 F. App'x 848, 855 (11th Cir. 2013) ("agree[ing] with the

### B. Motion for Leave

"[C]ompliance with the [discovery] requirements of Rule 26 is not merely aspirational." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008). A party who fails to make required discovery disclosures under Federal Rule of Civil Procedure 26(a) or (e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Particularly relevant here, Local Rule 26.2(C) expressly requires the disclosure of expert witnesses "sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness." Under that rule, a party who fails to comply with expert witness disclosure requirements "shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by Court order based upon a showing that the failure to comply was justified." *Id*.

---

district court's finding that in failing to respond to the defendants' arguments, [the] [plaintiffs] [had] abandoned their . . . claims"); *Jones v. Bank of America, N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (affirming the district court's grant of summary judgment because "when a party fails to respond to an argument or otherwise address a claim, the [c]ourt deems such argument or claim abandoned"); *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (deeming the plaintiff's claim abandoned where she failed to respond to the defendant's argument for dismissal of the claim on summary judgment). Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Counts III, V and VII of the Complaint.

Courts in this district have applied a five-factor test to determine whether to allow a late expert disclosure. *See, e.g.*, *Patrick v. Henry Cnty.*, No. 1:13-cv-01344-RWS, 2016 WL 2961103 (N.D. Ga. May 23, 2016). The factors are "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id*. at *3. In applying this test, the *Patrick* court refused to allow expert opinion testimony from treating physicians designated as witnesses for the first time in the pretrial order. *See id*. The court found that such disclosures were untimely, and the defendant would not have an opportunity to cure the surprise because discovery had closed. *See id*. The court, however, allowed the treating physicians to testify as facts witnesses (*i.e.*, to discuss their observations based on their treatment of the plaintiff) because the defendant was already aware of the facts of the plaintiff's injury, and the prejudice of the late disclosure of such testimony was therefore diminished. *See id*.

Here, the Court is not convinced by Adams' argument that the failure to disclose Citron would not cause surprise or is easily cured. Adams provided no disclosure regarding Citron. Expert disclosures are an affirmative and express

14

obligation, and contrary to Adams' contention, Defendants were not required to scour her discovery responses to discern what potential witnesses she could call as experts. Because discovery has closed and summary judgment briefing is ripe, the surprise of an expert disclosure at this late hour is not easily curable. Indeed, reducing the potential for prejudice would require the Court to reopen discovery and the parties to redo summary judgment briefing, ultimately delaying trial.

Moreover, such an extraordinary accommodation is not warranted due to Adam's lack of diligence. Citron was Smoot's treating physician, and Smoot was aware of Citron's opinion prior to filing his case. Yet, Smoot's counsel contacted Citron for the first time *after* the deadline for expert disclosures, and he did not seek leave to extend the deadline at that time or request other relief. Instead, he waited until months after the expert disclosure deadline and the close of discovery to file a motion.

Finally, Adams' lack of diligence belie her claim that Citron's testimony is critical to her case. She also vehemently argued in response to Defendants' Motion for Summary Judgment that expert testimony was not necessary to show causation. In sum, Adams' failure to provide the required expert disclosures is neither justified nor harmless and warrants denial of her Motion for Leave. *See Reese*, 527 F.3d at 1266 (finding that "the district court clearly acted within its

discretion by excluding the [expert's] affidavit" where the failure to comply with disclosure requirements was unjustified and harmful to the defendants); Fed. R. Civ. P. 37(c)(1); N.D. Ga. Civ. R. 26.2(C).

Based on the foregoing analysis, Defendants' Motion for Summary Judgment (ECF No. 40) is **DENIED** as to Counts I, II, IV, VI, VIII and IX of the Complaint.  Adams' Motion for Leave (ECF No. 53) is also **DENIED**.  As set forth in footnote 4, *supra*, Defendants' Motion for Summary Judgment is **GRANTED** as to Counts III, V and VII of the Complaint.

However, Adams may call Citron as a lay witness.  Citron may testify only regarding facts within his personal knowledge, including his treatment of Smoot. *See United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (explaining that a physician's diagnosis of the injury is permissible lay testimony).  Citron may not testify regarding the cause of Smoot's injury if such testimony is "not grounded in [Citron's] own experience." *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011); *see also* Fed. R. Evid. 701 (stating that lay opinion testimony must be:  "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702").

Since "the admissibility of lay opinion testimony is a highly fact-intensive determination," the Court currently lacks "the context of trial and specific testimony" to set additional parameters regarding Citron's testimony. *Cook v. CSX Transp., Inc.*, No. 6:06-cv-1193-Orl-19KRS, 2008 WL 2275544, at *4 (M.D. Fla. June 2, 2008). As such, the Court will refrain from any additional instructions on the issue at this time. "Should such testimony stray into improper expert testimony or consist of legal conclusions, [Defendants] may raise a proper objection at trial." *Coward v. Forestar Realty, Inc.*, No. 4:15-cv-0245-SCJ, 2019 WL 12536138, at *7 (N.D. Ga. June 28, 2019).

The parties are **DIRECTED** to file the Consolidated Pretrial Order required by Local Rule 16.4 within twenty-one days of entry of this Order. Failure to comply with this Order may result in sanctions, including dismissal of the case or entry of default judgment.

The Clerk is **DIRECTED** to submit the case at the expiration of the twenty-one-day period if a Consolidated Pretrial Order is not filed.

**SO ORDERED** this 19th day of September, 2022.

J. P. BOULEE
United States District Judge